**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NO. 23-124-DLB-EBA**

**JERRY SPURLOCK**                                                                                          **PLAINTIFF**


**v.**                                          **MEMORANDUM ORDER**


**ASHLAND INDEPENDENT SCHOOLS**
**BOARD OF EDUCATION** *et al.*                                          **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon Defendants' Motion to Dismiss the Amended Complaint. (Doc. # 17). Plaintiff has filed a Response (Doc. # 18) and Defendants have filed a Reply (Doc. # 24). For the reasons set forth herein, Defendants' Motion to Dismiss (Doc. # 11) is **granted**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Jerry Spurlock was banned from the facilities owned and operated by Ashland Independent Schools.  He filed this lawsuit against Ashland Independent Schools ("the District"), its Superintendent Sean Howard, Jamie Campbell, Principal of Paul Blazer High School and James Conoway, Athletic Director of Paul Blazer High School alleging that the ban violates his Constitutional rights to free speech and due process.

As previously noted by this Court, this case arises from the often-intense culture of high school sports.[1]  Plaintiff is the freshman high school basketball coach at Boyd County High School. (Amended Complaint, Doc. # 14, ¶ 15).   His son is a student at that

---

[1]  Memorandum Opinion and Order denying Plaintiff's Motion for Preliminary Injunction (Doc. # 13).

school and is a member of the high school basketball team.  *Id.* at ¶ 9.   Plaintiff alleges that during his son's eighth grade year, the then-basketball coach at Paul Blazer High School, Jason Mays, attempted to recruit his son to transfer to Defendant Ashland Independent Schools ("the District") and play for Paul Blazer. *Id.* at ¶ 16.   Plaintiff, presumably surreptitiously, recorded that conversation and ultimately, it was released on social media in September of 2022. *Id.* at ¶ 20.  Both the District and Boyd County High School reported the recording to the Kentucky High School Athletic Association ("KHSAA"). *Id.* at ¶ 21.  The KHSAA conducted an investigation and found that Coach Mays had violated its rules pertaining to impermissible recruiting. *Id.* at ¶ 23.  Thereafter, in November of 2022, the District fired Coach Mays. *Id.* at ¶ 24.

Plaintiff describes Mays as "having unprecedented success" as the coach for the Paul Blazer team. *Id.* at ¶ 17.  Plaintiff claims that following Coach Mays' dismissal, he and his son were subject to retaliation. *Id.* at ¶ 26.  He maintains that the Defendants permitted and even encouraged its staff, students, and basketball fans to harass them. He states there were antagonizing comments, chanted obscenities and lewd gestures aimed at him and his son during four basketball games in late 2022 and early 2023. *Id.* at ¶¶ 26-29 and 34.  He further claims that the Principal of Paul Blazer High School Jamie Campbell's wife "ambushed him" after the February 3, 2023, matchup between Paul Blazer and Boyd County. *Id.* at ¶ 30.   He alleges that she stared him down and stood where he was intending to walk.  *Id.* at ¶ 33.  He claims that she berated him, "why the fuck are you speaking to me, why are you saying anything to me?"   *Id.* at ¶ 32.  He attached two affidavits, including one from his son to his Amended Complaint to corroborate this exchange.  (Affidavit of Jessica Price, Doc. # 14-1 and Affidavit of Jason

Spurlock, Doc. # 14-2).   He further alleges that, "upon information and belief," Defendant Campbell directed his wife to initiate the interaction with him. (Doc. # 14, ¶ 33).  He claims that Defendant Campbell then attempted to follow him into the parking lot to confront him. Plaintiff previously submitted a video to the Court which purports to relay this incident but having reviewed the video, it is difficult to discern, in the post-game melee, an actual ambush, berating or confrontation.  (Doc. # 7).

On March 7, 2023, Boyd County played Paul Blazer in the Regional Championship at Morehead State University. (Doc. # 14, ¶ 37).  Plaintiff states that during the game obscenities and lewd gestures were again aimed at him from Paul Blazer's student section. *Id.*  He alleges that Defendant Campbell mouthed "fuck you" towards him. *Id.* at ¶ 37.  He claims that after the game, he attempted to "make a complaint" to the Paul Blazer staff but that its students, staff and administrators threatened him and that he was ultimately escorted out of the gym by police "for his own safety." *Id.* at ¶¶ 38-39.  He alleges that "at no point during this interaction did [he] make threatening remarks towards Defendants, staff or students."  *Id.* at ¶ 38.

In their previous filings with the Court, Defendants stated that at the March 7 game, Plaintiff behaved aggressively toward Paul Blazer's staff and even challenged Defendant Campbell to "meet him outside."   Defendants submitted a video of this incident which has been reviewed by the Court. (Doc. # 10). Consistent with Plaintiff's allegations, there were chants and lewd gestures from the student section as the spectators began to approach the gym floor and exit.  However, the video depicts Plaintiff taunting Defendant Campbell before being escorted out of the gym by police.

Three weeks later, by letter dated March 28, 2023, the District, through counsel, informed Plaintiff that he would "not be permitted to enter or remain upon the premises of any Ashland Independent School District property or any District event." (Doc. # 9-1). In support of what the parties refer to as the "No Trespass Order", the letter cites Board Policy 10.21, which charges the Board with the "responsibility to maintain safe, harassment-free schools, school activities, and workplaces for student and staff to minimize disruptions to the District's programs." *Id.* The letter states that on March 7, 2023, Plaintiff had made threatening or harassing communications toward District employees and/or their family members relating to the District's basketball program and students on the team. *Id.*

About six weeks later, Plaintiff sent what he refers to as a "Complaint", dated May 18, 2023, to Defendant Howard which recounts the instances of the alleged harassment against him and his son. (Doc. # 14, ¶ 42 and Doc. # 9-2). Plaintiff also asked for proof as to why he had been banned from the Districts' premises. *Id.*

In response, by letter dated May 22, 2023, the District, through counsel, asked Plaintiff to provide any documents, photos, videos or recordings which pertain to the instances of harassment he set forth in his May 18 complaint. (Doc. # 9-3). Although not specifically set forth in the record, at some point, Plaintiff complied.

On August 7, 2023, Plaintiff emailed Defendant Howard inquiring as to the status of his "Complaint." (Doc. # 9-4).

On August 15, 2023, Defendant Howard emailed Plaintiff and advised that he had reviewed Plaintiff's complaint as well as the documentation and video clips submitted by him and that he had found no support for Plaintiff's allegations of intimidation or

harassment. *Id.* Defendant Howard reiterated that the March 2023 letter restricting Plaintiff's attendance from Ashland events was based on "legitimate concerns about Plaintiff's communications about District employees and his conduct at sporting events." *Id.* He advised Plaintiff that the "restrictions would remain in place through June 30, 2024, at which time the circumstance would be reviewed to determine if the restrictions could be modified or ended." *Id.*

Plaintiff requested additional information and by letter dated October 11, 2023, the District, through counsel, reiterated its conclusion that there had been no harassment of Plaintiff. It also set forth instances in which Plaintiff had used inappropriate language and exhibited threatening behavior toward District employees and their family members. (Doc. # 5-4). In other words, the ban continued.

On December 27, 2023, Plaintiff filed this lawsuit against the Ashland Independent Schools Board of Education, its Superintendent Sean Howard, Jamie Campbell, Principal of Paul Blazer High School and James Conoway, Athletic Director of Paul Blazer High School seeking declaratory and injunctive relief, as well as attorney's fees and costs. (Doc. # 1). In his verified Complaint, Plaintiff alleged that banning him from any of the facilities owned or operated by Ashland Independent Schools was part of an ongoing campaign of retaliation against him for his exercise of his constitutional right to free speech. *Id.* at ¶¶ 45-63. He claimed that in instituting the ban, Defendants also deprived him of his constitutional right to due process. *Id.* at ¶¶ 64-73.

The day after he filed his Complaint, Plaintiff filed a motion seeking both a temporary restraining order as well as a preliminary injunction. (Doc. # 5). Specifically, he asked the Court to preclude Defendants from banning him from its facilities.

By Order entered on January 2, 2024, this Court denied Plaintiff's motion for a temporary restraining order but refrained from ruling upon a preliminary injunction until Defendants had an opportunity to respond. (Doc. # 8).

Following briefing by the parties, (Doc. # 9 and 11), this Court denied a preliminary injunction, finding that Plaintiff did not have a strong likelihood of success on the merits as to either his free speech or due process claims. (Doc. # 13).  With regard to free speech, this Court found that Plaintiff had not established that he engaged in protected conduct:

> The record reflects that he was banned based upon his conduct at the March 7 game. The video depicts him challenging one of the Defendants to nothing short of a fist fight and being escorted off the premises by local law enforcement. "Fighting words" fall out of the First Amendment's bounds.

*Id.* at 6. The Court further found that "Plaintiff engaged Defendant Campbell . . . after the basketball game, appeared to threaten him and challenged him to 'meet him outside.' This 'speech' is not protected conduct. Therefore, Plaintiff is unlikely to succeed on the merits of the First Amendment retaliation claim."  *Id.* at 9.

In addressing Plaintiff's due process claim, the Court stated, "citizens, including parents, do not have a liberty or property interest in accessing school property . . . . [a]s such, Plaintiff does not have a strong likelihood of success on the merits as to this claim." *Id.* at 9.

Defendants then filed a Motion to Dismiss (Doc. # 12), to which Plaintiff responded by filing an Amended Complaint (Doc. # 14).  The Amended Complaint, for the most part, reiterates the allegations set forth in the original Complaint, adding a conclusory allegation that "[a]t no time did any of Plaintiff's referenced speech constitute a crime, obscene

expression, incitement, or fraud." *Id. at* ¶ 13. Plaintiff also attached three affidavits as well as a video clip which purportedly shows moments before a fan was ejected from a game by a referee.  (Doc. # 14-1, 2 and 13 and Doc. # 15).

Defendants now seek dismissal of the Amended Complaint. (Doc. # 17). Plaintiff opposes the motion (Doc. # 18) and moves this Court for entry of an Order allowing the parties to engage in discovery (Doc. # 20).

## II.    STANDARD OF REVIEW

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court is called to assess whether the plaintiff has "state[d] a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In making that assessment, a court should accept the plaintiff's allegations as true, and then determine whether the plaintiff has pled sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In other words, "if the plaintiffs do 'not nudge their claims across the line from conceivable to plausible, their complaint must be dismissed.'" *Jackson v. Sedgwick Claims Mgmt. Servs.*, 731 F.3d 556, 562 (6th Cir. 2013) (*en banc*), (quoting *Twombly*, 550 U.S. at 570), *cert. denied*, 572 U.S. 1100 (2014).

To give rise to plausibility, the complaint must contain factual allegations that speak to all of a claim's material elements "under some viable legal theory."  *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).  In short, a claim cannot survive a motion to dismiss if the plaintiff has not pleaded sufficiently plausible facts to support a "viable legal theory" with respect to all material elements of each claim.  *See id*. The Court is not required to "accept as true legal conclusions or unwarranted factual

inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (citations omitted).

Usually, in adjudicating a motion to dismiss, the Court is only permitted to consider the complaint and attached exhibits, items in the record, and "documents that a defendant attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2011) (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)).  If documents beyond that scope are considered, the motion to dismiss will be converted to a motion for summary judgment.  *Spencer v. Grand River Nav. Co., Inc.*, 644 F. App'x 559, 561-62 (6th Cir. 2016) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). Defendants suggest that the briefing and exhibits accompanying the original Complaint and the Motion for Temporary Restraining Order and Preliminary Injunction warrant a conversion to a motion for summary judgment.  The Court disagrees and finds that these materials are referred to in the Amended Complaint and are central to the claims alleged therein. Therefore, the Court will apply the standard set forth in Rule 12(b)(6) to the instant motion.

### III.    ANALYSIS

### A.

In his Amended Complaint, Plaintiff alleges a deprivation of due process in violation of 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments of the United States Constitution. (Doc. # 14, ¶ 78).   Specifically, he claims that Defendants banned him from their facilities "without a fair and impartial hearing."  *Id.*

42 U.S.C. § 1983 "creates no substantive rights, but merely provides remedies for deprivation of rights established elsewhere." *Gardenhire v. Shubert*, 205 F.3d 303, 310 (6th Cir. 2000) (citations omitted). In order to succeed on a § 1983 claim, a plaintiff must show that the defendant "acted under color of state law" and that its "conduct deprived the Plaintiff of rights secured under federal law."  *Fritz v. Charter Twp. of Comstock,* 592 F.3d 718, 722 (6th Cir.2010) (citing *Bloch v. Ribar,* 156 F.3d 673, 677 (6th Cir.1998)). In other words, § 1983 is the mechanism or vehicle by which to seek redress for the deprivation of a right.

In this case, the right at issue is due process.  However, "citizens, including parents, do not have a liberty or property interest in accessing school property."  *Ritchie v. Coldwater Community Schools*, No. 11-CV-530, 2012 WL 2862037, 16-17 (W.D. Mich. 2012).  As that Court noted:

> To this Court's knowledge, every court that has considered the issue has concluded that citizens, including parents, do not have a liberty or property interest in accessing school property. *See Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ.,* 42 F.3d 719, 724 (2d Cir.1994) ("As a Board of Education member, Silano did not have an unrestricted right to enter the school classrooms or hallways during school hours."); *Justice v. Farley,* No. 5:11–CV–99–BR, 2012 WL 83945, at *3 (E.D.N.C. Jan.11, 2012) ("Many courts have held that parents do not have a constitutional right to be on school premises"); *Martin v. Clark,* No. 3:10 CV 1500, 2010 WL 4256030, at *2 (N.D.Ohio Oct.21, 2010) (noting that the plaintiff had "not directed the Court to any authority, in this jurisdiction or elsewhere, that establishes he has a liberty interest in attending school functions or being on school property"); *Cwik v. Dillon,* No. C–1–09–669, 2010 WL 5691404, at *6 (S.D.Ohio Sept.20, 2010) (concluding that the "Plaintiff's liberty interest in directing the education of his children does not extend to a constitutional right to unlimited admittance into or onto the building and grounds of his children's school"); *Pearlman v. Cooperstown Cent. Sch. Dist.,* No. 3:01–CV–504, 2003 WL 23723827, at *3 (N.D.N.Y.

> Apr.6, 2003) (holding the plaintiff-principal who was suspended for inappropriate behavior with a female student and was forbidden from entering school property without the permission of the superintendent while on suspension lacked a liberty interest required to support a due process claim).

*Id. See also Cwik v. Dillon, No. C-1-09-669, 2010 WL 5691404, at \*5 (S.D. Ohio Sept. 20, 2010), report and recommendation adopted, No. 1:09-CV-00669, 2011 WL 379039 (S.D. Ohio Feb. 2, 2011). Mejia v. Holt Public Schools, No. 5:01–CV–116, 2002 WL 1492205 (W.D. Mich. Mar. 12, 2002).*

In the absence of a liberty interest in unfettered access to school property, no process was due. Therefore, Plaintiff has not stated a plausible claim in this regard and his due process claim must be dismissed.

**B.**

In his Amended Complaint Plaintiff alleges that Defendants violated his First Amendment rights to freedom of speech "by retaliating against [his] speech to Boyd County High School, to the KHSAA, on social media, and directly to Defendants and by banning him" from the District's facilities. (Doc. # 14, ¶58).

To establish a claim for First Amendment retaliation, Plaintiff must show that (1) he engaged in protected conduct; (2) there was an adverse action taken against him "that would deter a person of ordinary firmness from continuing to engage in the conduct"; and (3) "there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus–X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999).

As this Court previously found, Plaintiff's claim fails at the first step of the inquiry. He has not plausibly alleged that he engaged in "protected conduct."  At the March 7

basketball game, Plaintiff appeared to threaten Defendant Campbell and challenged him to "meet him outside."  He dared one of the Defendants to nothing short of a fist fight before escorted off the premises by local law enforcement.  "Fighting words" fall well outside of the First Amendment's bounds.  Indeed, "an invitation to exchange fisticuffs" is the very epitome of fighting words. *Texas v. Johnson*, 491 U.S. 397, 409 (1989).

Further, in Kentucky, threatening or disruptive conduct directed at school employees is unlawful.  KRS 161.190 provides:

> Whenever a teacher, classified employee, or school administrator is functioning in his capacity as an employee of a board of education of a public school system, it shall be unlawful for any person to direct speech or conduct toward the teacher, classified employee, or school administrator when such person knows or should know that the speech or conduct will disrupt or interfere with normal school activities or will nullify or undermine the good order and discipline of the school.

KRS 161.190.

This statute is cited in the specific policy referenced by the District in its March 28 letter to Plaintiff notifying him of the ban. It reflects well settled First Amendment jurisprudence and its constitutionality was affirmed by Kentucky Court of Appeals in *Masters v. Commonwealth*, 551 S.W.3d 458 (Ky. App. 2017). In doing so, that Court noted that threatening a school principal to "meet outside" to fight were "fighting words" not protected by the First Amendment. *Id.* at 461.  Such is the case here.

To the extent that Plaintiff continues to contend that something other than his conduct on March 7 resulted in the ban, the timeline of events belies this claim.  The

restriction or "ban" was put in place only after, and in response to, his conduct on March 7. Indeed, the Court has already rejected Plaintiff's argument in this regard.  In denying his Motion for Preliminary Injunction, this Court held:

> To the extent that Plaintiff suggests that the protected conduct which supports his claim is his involvement in the events which lead to the termination of Coach Mays, he has not produced any evidence in this regard.  The events leading up to Coach Mays' termination took place several months prior to the District effectively banning Plaintiff from its property.  No action was taken against him until he threatened Defendant Campbell at the March 7 game.   There are no facts in the record which would support even the most tenuous causal connection between the events of the fall of 2022, beginning with the KHSAA investigation, and the Districts action against Plaintiff in March of 2023.

(Doc. # 13, p. 9).

Nor does Plaintiff's allegation that "[a]t no time did any of [his] referenced speech constitute a crime, obscene expression, incitement, or fraud" nudge his First Amendment claim into the realm of plausibility.   A Court need not, indeed, must not, accept as true "a legal conclusion couched as a factual allegation," *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (citation and internal quotation marks omitted).

Plaintiff has not plausibly alleged that he engaged in constitutionally protected speech, much less that the District's decision to prohibit him from being on school property pursuant to Board policy and Kentucky law violated his constitutional rights. As such, his claim for retaliation must be dismissed.

## IV.    CONCLUSION

Plaintiff's Amended Complaint fails to allege facts to support a claim of retaliation or denial of due process. Plaintiff's threatening conduct at the March 7, 2023, game was not protected speech, and the District's decision to prohibit Plaintiff from attending events

on District property in order to ensure a safe environment and prevent disruption of school events was appropriate.

"[A] constitutional violation does not occur every time someone feels that they have been wronged or treated unfairly." *Shinn on Behalf of Shinn v. College Station Independent School District*, 96 F.3d 783, 786 (5th Cir. 1996).  Yet that is precisely what Plaintiff's Amended Complaint alleges.  However, there is no constitutional right to go to sporting events and not be yelled at by fans. As Defendants correctly note, if that were the case, every spectator sport in America would cease to exist.  Nor does the Constitution protect, condone or absolve threatening and disruptive behavior at a school event.

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)    Defendants' Motion to Dismiss (Doc. # 17) is **GRANTED**;

(2)    Plaintiff's Motion to Commence Discovery (Doc. # 20) is **DENIED;**

(3)    Plaintiff's Amended Complaint (Doc. # 14) is **DISMISSED**;

(4)    This matter is **STRICKEN** from the Court's active docket; and

(5)    An accompanying Judgment shall be entered contemporaneously herewith.

This 31st day of July, 2024.



**Signed By:**

***David L. Bunning***

**United States District Judge**

G:\Judge-DLB\DATA\ORDERS\Ashland Civil\2023\23-124 MTD.docx